███████████████████████████

## IN THE UNITED STATES COURT OF FEDERAL CLAIMS
## BID PROTEST

DYNCORP INTERNATIONAL LLC,          )
                                     )
          Plaintiff,                 )
                                     )
     v.                              )
                                     )
THE UNITED STATES,                   )
                                     )        No. 19-1133C
          Defendant,                 )        (Senior Judge Smith)
                                     )
     and                             )
                                     )
KELLOGG, BROWN & ROOT                )
SERVICES, INC.,                      )
VECTRUS SYSTEMS CORPORATION,         )
FLUOR INTERCONTINENTAL, INC.,        )
and PAE-PARSONS GLOBAL               )
LOGISTICS SERVICES, LLC,             )
                                     )
          Defendant-Intervenors.     )

---

## DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S
## CROSS-MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD

---

JOSEPH H. HUNT                       WILLIAM P. RAYEL
Assistant Attorney General           Senior Trial Counsel
                                     Commercial Litigation Branch
ROBERT E. KIRSCHMAN, JR.             Civil Division
Director                             United States Department of Justice
                                     PO Box 480, Ben Franklin Station
PATRICIA M. MCCARTHY                 Washington, D.C. 20044
Assistant Director                   Tel: (202) 616-0302
                                     Fax: (202) 307-0972
                                     E-mail: William.Rayel@usdoj.gov


Dated: November 14, 2019             Attorneys for Defendant

## TABLE OF CONTENTS

ARGUMENT ................................................................................................................2

    I.    Discussions ....................................................................................................2

        A.    DynCorp's High Prices ......................................................................2

            1.    The Army Reasonably Declined To Address DynCorp's High Total Evaluated Prices During Discussions Because It Determined That They Were Not Unreasonable ............................2

            2.    The Army Did Not Treat DynCorp Disparately By Discussing Cost/Price Concerns With Other Offerors In February 2019 .........4

            3.    DynCorp Has Not Demonstrated Prejudice From The Army's Decision Not To Discuss Its High Prices.........................................5

                a.    Prejudice Is Not Presumed In Bid Protests In This Court ...6

                b.    DynCorp Has Not Demonstrated Prejudice ........................7

        B.    Labor Staffing Model.........................................................................9

            1.    DynCorp Has Not Demonstrated That The Army's Discussions With Regard To DynCorp's Labor Staffing Model Were Inadequate .................................................................................9

            2.    DynCorp Has Not Demonstrated Prejudice From The Army's Alleged Failure To Conduct Meaningful Labor Staffing Model Discussions ...............................................................................10

        C.    DynCorp Has Not Demonstrated That The Army's ██████ ██ Evaluation Notice Was Misleading Or Prejudicial........................11

    II.    Awardees' Price Reasonableness.............................................................11

        A.    The Contracting Officer Rationally Determined That The Prices For The Awardee In Each Region Were Reasonable ......................................11

        B.    DynCorp Has Not Demonstrated Prejudice From Any Alleged Error In The Price-Reasonableness Determinations For The Awardees.............14

III.    Cost Realism ...................................................................................................15

        A.    DynCorp Has Not Demonstrated Any Prejudicial Error In The Army's
              Analysis Of The Realism Of Offerors' Proposed Labor Hours.................15

        B.    DynCorp Has Not Demonstrated That The Army Should Have
              Increased The Probable Cost For Fluor's AFRICOM Proposal Or That
              Any Such Error Was Prejudicial..............................................................16

IV.     KBR's Past Performance ....................................................................................16

        A.    The Army Rationally Assigned KBR A Past Performance Rating Of
              Substantial Confidence .............................................................................16

        B.    DynCorp Has Not Demonstrated Any Prejudice From The Army's
              Decision Not To Lower KBR's Past Performance Rating........................19

V.      DynCorp Has Not Demonstrated An Entitlement To A Permanent Injunction.....19

CONCLUSION.....................................................................................................................20

# TABLE OF AUTHORITIES

**Cases**

*AECOM Mgmt. Servs., Inc.—Advisory Op.*, B-417506.12,
   2019 WL 5207000 (Comp. Gen. Sept. 18, 2019) .................................................... 15

*Bannum, Inc. v United States*,
   404 F.3d 1346 (Fed. Cir. 2005) ............................................................... 6

*Brooks Range Contract Servs., Inc. v. United States*,
   101 Fed. Cl. 699 (2011) ................................................................. 10, 11

*Ceres Envtl. Servs., Inc. v. United States*,
   97 Fed. Cl. 277 (2011) ....................................................................... 8

*CYIOS Corp. v. United States*,
   122 Fed. Cl. 726 (2015), *aff'd*, 674 F. App'x 1016 (Fed. Cir. 2017) ....................... 17

*D & S Consultants, Inc. v. United States*,
   101 Fed. Cl. 23 (2011) ....................................................................... 5

*Data Gen. Corp. v. Johnson*,
   78 F.3d 1556 (Fed. Cir. 1996) ........................................................... 7, 9

*Digitalis Educ. Solutions, Inc. v. United States*,
   97 Fed. Cl. 89 (2011), *aff'd*, 664 F.3d 1380 (Fed. Cir. 2012) .......................... 6, 7

*Glenn Defense Marine (ASIA), PTE Ltd. v. United States*,
   720 F.3d 901 (Fed. Cir 2013) ........................................................... 6, 8

*Impresa Construzioni Geom. Domenico Garufi v. United States*,
   238 F.3d 1324 (Fed. Cir. 2001) ........................................................ 7, 17

*JWK Int'l Corp. v. United States*,
   279 F.3d 985 (Fed. Cir. 2002) ............................................................. 7

*Litton Systems, Inc., Amecom Div.*,
   97-1 CPD ¶ 170, 1997 WL 230872 (Comp. Gen. 1997) .................................... 13, 14

*PAE Aviation and Tech. Servs., LLC*,
   2019 CPD ¶ 317, 2019 WL 4746814 (Comp. Gen. 2019) .................................... 15

*Novosteel SA v. United States*,
   284 F.3d 1261 (Fed. Cir. 2002) ........................................................... 10

*Savantage Fin. Servs., Inc. v. United States*,
  595 F.3d 1282 (Fed. Cir. 2010) ........................................................... 17

*Senter, LLC v. United States*,
  138 Fed. Cl. 110 (2018) ...................................................................... 10

*Serco Inc. v. United States*,
  81 Fed. Cl. 463 (2008) ....................................................................... 13

*Technatomy Corp.*,
  2018 CPD ¶ 353, 2018 WL 5292575 (Comp. Gen. 2018) .................... 3, 13

*Vanguard Recovery Assistance v. United States*,
  101 Fed. Cl. 765 (2011) .................................................................. 6, 7, 8

*Westech Int'l, Inc. v. United States*,
  79 Fed. Cl. 272 (2007) ....................................................................... 18

*Winter v. Natural Res. Def. Council, Inc.*,
  555 U.S. 7 (2008) .............................................................................. 19

*WKG and Associates, LLC*,
  2014 CPD ¶ 250, 2014 WL 4213061 (Comp. Gen. 2014) ...................... 12

## **Statutes**

5 U.S.C. § 706(2)(A) ................................................................................ 6

## **Regulations**

FAR § 15.001 ........................................................................................... 5

FAR § 15.306 ........................................................................................... 7

FAR § 15.402(a)(1) ................................................................................... 4

FAR § 15.404-1 ................................................................................. passim

███████████████████████████████████████████

## IN THE UNITED STATES COURT OF FEDERAL CLAIMS
### BID PROTEST

| | | |
|---|---|---|
| DYNCORP INTERNATIONAL LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | No. 19-1133C |
| Defendant, | ) | (Senior Judge Smith) |
| | ) | |
| and | ) | |
| | ) | |
| KELLOGG, BROWN & ROOT | ) | |
| SERVICES, INC., | ) | |
| VECTRUS SYSTEMS CORPORATION, | ) | |
| FLUOR INTERCONTINENTAL, INC., | ) | |
| and PAE-PARSONS GLOBAL | ) | |
| LOGISTICS SERVICES, LLC, | ) | |
| | ) | |
| Defendant-Intervenors. | ) | |

**DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S
CROSS-MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD**

Defendant, the United States, respectfully submits this reply in support of its cross-motion for judgment on the administrative record. DynCorp's response brief continues to improperly second guess the Army's technical, past performance, and cost/price evaluations. Accordingly, the Court should grant the Government judgment on the administrative record.

DynCorp submitted a proposal that contained higher total prices than those of the awardee for each region and was inferior to each awardee's proposal for the combined non-price factors. Although DynCorp tries to blame the Army for Dyncorp's own business decisions, the administrative record demonstrates that the Army rationally declined to address DynCorp's high

prices or the limitations of its final labor staffing model during discussions, because the Army rationally declined to find that DynCorp's prices were unreasonable or that DynCorp's final labor staffing model contained weaknesses.

The rest of DynCorp's arguments fare no better, as it continues to merely disagree with the Army's discretionary business judgments.  The administrative record demonstrates that the Army rationally determined that the prices of the awardee for each region were reasonable, performed a thorough and detailed cost-realism evaluation, and reasonably assigned KBR a Substantial Confidence rating based upon its strong past performance on numerous relevant contracts, notwithstanding some recent adverse past performance on one task order.

Moreover, DynCorp has still not demonstrated that any of its alleged procurement errors were prejudicial, in light of the awardees' lower prices and superiority for the combined non-price factors.  Instead, DynCorp erroneously argues that prejudice is presumed, contradicting binding decisions from the United States Court of Appeals for the Federal Circuit.

The Court should reject DynCorp's invitation to micromanage the LOGCAP V procurement.  Rather, it should grant the Government judgment on the administrative record.

## **ARGUMENT**

I.    **Discussions**

A.    **DynCorp's High Prices**

1.    **The Army Reasonably Declined To Address DynCorp's High Total Evaluated Prices During Discussions Because It Determined That They Were Not Unreasonable**

As we demonstrated in our cross-motion, the contracting officer rationally declined to address DynCorp's high prices during discussions because she rationally determined that DynCorp's total evaluated prices were not unreasonable, in light of its technical approach and

rates.  Def. Mot. 16-18.[1]  In response, DynCorp continues its unusual and erroneous attempt to undermine its own proposal by arguing that, "by any rational, objective standard . . . [DynCorp's] price was 'too high' and unreasonably so."  Pl. Resp. 4.  In support of its unorthodox argument, DynCorp relies upon the fact that its total evaluated prices were at least 30 percent higher than those of the awardee in six of the seven regions.  *Id.*  But a price disparity where the highest-priced offer was "more than two and a half times higher" than the lowest-priced offer "does not establish that any particular offeror's prices are unreasonably high *per se*[.]"  *Technatomy Corp.*, 2018 CPD ¶ 353, 2018 WL 5292575, at *10 (Comp. Gen. 2018).

Here, the contracting officer noted that DynCorp had the highest total evaluated prices in five of the seven regions, but rationally determined that these prices were not unreasonable in light of the Cost/Price team's determination that DynCorp's "proposed direct and indirect rates [are] supportable" and DynCorp's unique and acceptable technical approach, which included

█████████████████████████████████████████████████████████████████
█████████████████████████████████.  Tab 331, AR 124863-64; Tab 945, AR 753854, 753860, 753863, 753866, 753872.  Contrary to DynCorp's argument, the record does *not* show that DynCorp's prices resulted from █████████████████████████████████ █████████████████████████████████  Pl. Resp. 5.  Rather, the Cost/Price team took no issue with DynCorp's labor rates, and its technical approach was determined to be acceptable or better.  Tab 331, AR 124863-64; Tab 643, AR 655140-66; Tab 749, AR 749160-61.[2]

---

[1]  "Def. Mot. __" refers to our cross-motion for judgment on the administrative record, filed on October 22, 2019.  "Pl. Resp. __" refers to DynCorp's response to our cross-motion, filed on November 4, 2019.

[2]  Also, contrary to DynCorp's argument, Pl. Resp. 9, we did not assert in our brief that the contracting officer conducted a "value analysis" pursuant to FAR § 15.404-1(b)(4) in analyzing the reasonableness of *DynCorp's* prices.  Rather, in addressing DynCorp's prices, we

DynCorp also erroneously alleges that the contracting officer never addressed the reasonableness of DynCorp's prices.  *See* Pl. Resp. 6.  DynCorp is ignoring the administrative record.  In her December 2018 memorandum, the contracting officer expressly stated that "DynCorp's total evaluated prices are not unreasonable for its technical approach," and "[t]here is no basis to state that DynCorp's proposed prices are too high in some regions[.]"  Tab 331, AR 124864.  The fact that the *Cost/Price team* had not yet performed its price reasonableness evaluations does not preclude the *contracting officer* from performing her own price reasonableness evaluation.  Indeed, FAR § 15.402(a)(1) provides that the "contracting officer is responsible for evaluating the reasonableness of the offered prices."  In any event, as the GAO correctly observed, the Army was not required to evaluate the reasonableness of non-awardees' prices.  Tab 749, 749166; *see also* FAR § 15.404-1(a) ("The objective of proposal analysis is to ensure that the *final agreed-to price* is fair and reasonable.") (emphasis added).

Accordingly, the contracting officer rationally declined to address DynCorp's high prices during discussions.

## 2.    The Army Did Not Treat DynCorp Disparately By Discussing Cost/Price Concerns With Other Offerors In February 2019

As we also demonstrated in our cross-motion, the Army did not treat DynCorp unequally by discussing specific cost/price concerns with other offerors in February 2019, because the Army had no remaining "concerns" with DynCorp's pricing.  Def. Mot. 18-19.

In response, DynCorp alleges that the Army re-opened discussions for cost/price concerns that were not significant weaknesses and deficiencies.  Pl. Resp. 5.  That is true, but irrelevant.  As we demonstrated in our cross-motion, the "concerns" addressed in the February

cited this provision for the sole purpose of demonstrating the fallacy of DynCorp's argument that an offeror's technical approach is irrelevant to the reasonableness of its prices.  Def. Mot. 17.

2019 discussions were specific flaws in the offerors' Cost/Price proposals.  Def. Mot. 19; *see also* Tab 212, AR 73897.  By February 2019, DynCorp had no such flaws remaining in its proposal; rather, in light of DynCorp's technical approach, the Army had no outstanding concerns with DynCorp's prices.  *See* Tabs 112-1 to 112-7, 168, 204, 331.  DynCorp's high prices were the result of the business judgments of a sophisticated Government contractor, and the Army was under no obligation to spoon-feed DynCorp the ways it could make its proposal more competitive, where it found no flaw in DynCorp's approach.  *See, e.g.*, *D & S Consultants, Inc. v. United States*, 101 Fed. Cl. 23, 40 (2011); *see also* Tab 749, AR 749171 (GAO stating that DynCorp's "reasoning ignores [its] own actions in making the business judgments that led to the cost/price proposal that it submitted").[3]

### 3. DynCorp Has Not Demonstrated Prejudice From The Army's Decision Not To Discuss Its High Prices

DynCorp has still not demonstrated that it was prejudiced by the Army's decision not to discuss DynCorp's high prices.  Rather, it primarily relies upon an erroneous argument that prejudice is presumed when the agency acts irrationally, and, thus, DynCorp need not demonstrate a substantial chance of award.  *See* Pl. Resp. 1, 12-13, 25-26.  As demonstrated below, the Federal Circuit has made clear that, to succeed in a bid protest, the plaintiff must demonstrate that it would have had a substantial chance of award but for the alleged errors, even where it alleges irrational procurement decisions.  DynCorp has not met its burden here.

---

[3]  Also, contrary to DynCorp's characterization, we did not label DynCorp's high prices as a "minor weakness" in our cross-motion.  Pl. Resp. 5 (quoting Def. Mot. 15).  The quoted language is from a GAO decision regarding the general requirements for discussions. Def. Mot. 15.  DynCorp's prices were not a "weakness," minor or otherwise, as a weakness is defined as "a flaw [of an offeror's] proposal that increases the risk of unsuccessful contract performance."  FAR § 15.001; Tab 3, AR 2626.  The Army never determined that DynCorp's final price proposals increase the risk of unsuccessful contract performance.

a.    <u>**Prejudice Is Not Presumed In Bid Protests In This Court**</u>

As an initial matter, DynCorp's argument that prejudice is "presumed" when the plaintiff demonstrates an irrational procurement decision is contradicted by Federal Circuit precedent. For example, in *Bannum, Inc. v. United States*, the Federal Circuit explained:

> A bid protest proceeds in two steps. First . . . the trial court determines whether the government acted *without rational basis or* contrary to law . . . Second, as discussed further in Section III, if the trial court finds that the government's conduct fails the [Administrative Procedure Act] review under 5 U.S.C. § 706(2)(A), then it proceeds to determine, as a factual matter, if the bid protester was prejudiced by that conduct.

404 F.3d 1346, 1351 (Fed. Cir. 2005) (emphasis added).  In "Section III," the Court then explained that, to establish prejudice, a plaintiff "must show that there was a 'substantial chance' it would have received the contract award but for the errors" identified by the Court.  *Id.* at 1353. Likewise, in *Glenn Defense Marine (ASIA), PTE Ltd. v. United States*, the plaintiff alleged irrational past performance evaluations, and the Federal Circuit stated that, to "establish prejudice, [the plaintiff] must show that there was a substantial chance it would have received the contract award but for the [agency's] allegedly erroneous past performance rating."  720 F.3d 901, 908, 912 (Fed. Cir. 2013).

Accordingly, DynCorp bears the burden to demonstrate prejudice, regardless of whether it alleges is an irrational decision or violation of law, and prejudice may not be presumed. Indeed, this Court has already rejected the argument that "a protestor is required to show prejudice only when alleging a violation of statute or regulation and not when challenging the rational basis of the procurement[.]"  *Digitalis Educ. Solutions, Inc. v. United States*, 97 Fed. Cl. 89, 95 (2011), *aff'd*, 664 F.3d 1380 (Fed. Cir. 2012); *see also Vanguard Recovery Assistance v.*

*United States*, 101 Fed. Cl. 765, 790 (2011) ("The only specifically irrational portion of the [source selection authority's] analysis was nonprejudicial.").[4]

In any event, improper discussions are violations of FAR § 15.306, and the Federal Circuit has held that the plaintiff bears the burden of demonstrating a substantial chance when it alleges improper discussions. *JWK Int'l Corp. v. United States*, 279 F.3d 985, 988 (Fed. Cir. 2002); *Data Gen. Corp. v. Johnson*, 78 F.3d 1556, 1562-63 (Fed. Cir. 1996). It is indisputable that DynCorp has the burden to show that it was prejudiced by the alleged discussion errors.

### b.      DynCorp Has Not Demonstrated Prejudice

With the proper test established, DynCorp has still not shown that it was prejudiced by the agency's decision not to discuss its high prices.

As we demonstrated in our cross-motion, in each of the six regions where an IDIQ contract could have been awarded based upon the best-value determination, DynCorp's total evaluated price was more than 30 percent higher than the awardee's price, and DynCorp's proposal was inferior to each awardee on the combined non-price factors. Def. Mot. 19. Accordingly, to obtain an IDIQ award, DynCorp would have needed to not only beat an awardee's price in one of these regions, but beat it by a large enough margin to outweigh the awardee's advantage on the significantly more important non-price factors. Tab 3, AR 2624.

The declaration from ████████████ attached to DynCorp's response does not demonstrate prejudice. First, even though DynCorp now knows the total evaluated prices of the

---

[4] DynCorp's argument that prejudice is presumed is based primarily upon a few non-binding decisions by this Court. Pl. Resp. 1, 12-13, 25-26. For the reasons stated above, those decisions are contrary to Federal Circuit precedent and should not be followed. DynCorp's contention that *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324 (Fed. Cir. 2001), supports its argument is also misplaced. *Digitalis*, 97 Fed. Cl. at 95 (rejecting the argument that *Impresa* eliminated the prejudice requirement for irrational agency action).

awardees, Tab 651, AR 660438-44, ███████████ does not provide any calculations to demonstrate how DynCorp would have lowered its prices to underbid any of the awardees. Pl. Resp. Ex. A.  Second, although ███████████ suggests that DynCorp "would have immediately recognized a significant potential issue associated with [its] assumptions used to price its proposal" if it had received an evaluation notice indicating that its prices were high, he does not identify the "assumptions" DynCorp would have questioned based upon a general evaluation notice regarding DynCorp's high prices.  Pl. Resp. Ex. A, p. 4.  If the Army had determined that DynCorp's prices were unreasonable, it would have only been required to inform DynCorp of this fact, not explain which aspects of its prices were higher than competitors and by how much.  *See, e.g.*, *Ceres Envtl. Servs., Inc. v. United States*, 97 Fed. Cl. 277, 309 (2011) ("Meaningful discussions '*generally* lead offerors into the areas of their proposals requiring amplification or correction.'") (citation omitted) (emphasis added).

We agree that the Court should not "speculate" about how DynCorp would have changed its proposal in response to the allegedly required discussions.  *See* Pl. Resp. 25-28.  Rather, the Court should require DynCorp to *show* how it would have changed its proposal such that there would have been "a substantial chance it would have received [a] contract award but for" the agency's alleged errors.  *Glenn Def.*, 720 F.3d at 912.  If a plaintiff has not demonstrated a substantial chance of award in the absence of the alleged procurement error, then the Court should not find prejudice.  *Vanguard*, 101 Fed. Cl. at 790 ("While it is evident that the agency violated the law, the consequences of that transgression insofar as this procurement are concerned remain obscured. 'In a post-award protest, the protester bears the burden of establishing prejudice,' . . . and [the plaintiff] has failed to carry this burden") (citation omitted).

Here, DynCorp does not even allege that it would have lowered its prices sufficiently to win any particular region if the agency had addressed its high prices during discussions. *See* Pl. Resp. 12 ("there is no way to know, at this juncture what the actual outcome would have been"). Although DynCorp does not need to demonstrate that it definitely would have won a contract in the absence of the alleged errors, a "reasonable possibility" of an award is not sufficient to establish prejudice. *Data Gen.*, 78 F.3d at 1563. The Court should not speculate about what DynCorp might have done; rather, the Court should find that DynCorp has not demonstrated prejudice from the alleged error.

**B.** **Labor Staffing Model**

**1.** **DynCorp Has Not Demonstrated That The Army's Discussions With Regard To DynCorp's Labor Staffing Model Were Inadequate**

In our opening brief, we demonstrated that the limitations the Army identified in DynCorp's labor staffing model were not significant weaknesses or deficiencies; rather, they were reasons not to assess DynCorp a strength. Def. Mot. 21-23. In response, DynCorp erroneously argues that this "characterization is not found anywhere in the [administrative record] and is contradicted by the Army's real-time evaluations[.]" Pl. Resp. 13. In fact, the TMET expressly stated that it "did not assess any strengths, weaknesses, significant weaknesses, or deficiencies to DynCorp's labor staffing model and approach." Tab 96-1, AR 68276. Accordingly, because the limitations were not considered weaknesses by the Army, they were necessarily considered reasons not to assess a strength.

Moreover, the TMET had "confidence in DynCorp's labor staffing model" and determined that "DynCorp's labor staffing model and approach is feasible and capable of being used to successfully meet the requirements." *Id.* In light of these positive findings, the assessment of DynCorp's labor staffing model as "simplistic, broad, and generic," Pl. Resp. 14

(quoting Tab 122-2, AR 70321), is properly understood as a reason not to find a strength, *i.e.*, "an aspect of an offeror's proposal that has merit or exceeds specified performance or capability requirements in a way that will be advantageous to the Government during contract performance," rather than a weakness, significant weakness, or deficiency.  Tab 3, AR 2626.

DynCorp also raises a new argument in its response, incorrectly asserting that, "[a]t a minimum, these 'limitations' were weaknesses," which obligated the Army to conduct discussions because the Army had decided to exceed the minimum requirements of the FAR and discuss all "weaknesses" with offerors.  Pl. Resp. 13-14.  As demonstrated above, the limitations identified by the Army were reasons not to grant a strength, not weaknesses.  Moreover, the Army did not commit to discussing every aspect of an offeror's proposal that prevented it from receiving a strength.  Rather, the solicitation simply stated that the "Government will hold discussions with Offerors included in the competitive range."  *See* Tab 3, AR 2624.  In any event, DynCorp waived this argument by not raising in its motion for judgment on the administrative record.  *See, e.g.*, *Novosteel SA v. United States*, 284 F.3d 1261, 1273-74 (Fed. Cir. 2002); *Senter, LLC v. United States*, 138 Fed. Cl. 110, 121 n.10 (2018).

Accordingly, the Army was not required to address the limitations of DynCorp's labor staffing model during discussions.

## 2. DynCorp Has Not Demonstrated Prejudice From The Army's Alleged Failure To Conduct Meaningful Labor Staffing Model Discussions

Like its opening brief, DynCorp's response brief does not explain how further discussions regarding its labor staffing model would have given it a substantial chance of award. *See* Pl. Resp. 13-14, 25-28.  By failing to address the issue in its opening brief, DynCorp waived any argument that it was prejudiced by the Army's allegedly inadequate labor staffing model discussions.  *See Brooks Range Contract Servs., Inc. v. United States*, 101 Fed. Cl. 699, 708-10

(2011).  DynCorp's subsequent failure to address the issue in its response confirms that DynCorp

has not demonstrated that this alleged error was prejudicial.

      **C.**    **DynCorp Has Not Demonstrated That The Army's** ███████████
             **Evaluation Notice Was Misleading Or Prejudicial** _____

      In our cross-motion, we demonstrated that DynCorp waived its misleading discussions

argument, and, in any event, the argument is based upon a misreading of the plain language of

the evaluation notice at issue, which in no way precluded DynCorp from relying upon ███

███.  Def. Mot. 24-26.  We also demonstrated that DynCorp failed to show prejudice from

this alleged error.  *Id.* at 26-27.

      DynCorp does not address waiver and prejudice in its response.  Instead, DynCorp

confines its argument on this issue to a footnote, where it erroneously criticizes us for

"parrot[ting] back the language" of the evaluation notice at issue.  Pl. Resp. 11 n.5.  We

"parrot[ted] back the language" of the evaluation notice because it plainly demonstrates that the

Army was seeking support for the ███████████████████████████

███████████████████████████████████████

████████ Tab 168, AR 71214 ("please provide further documentation to support the

approximate █████████████████████████████").  DynCorp's

misleading discussions argument remains meritless.

**II.**    **Awardees' Price Reasonableness**

      **A.**    **The Contracting Officer Rationally Determined That The Prices For The**
             **Awardee In Each Region Were Reasonable** _____

      In our cross-motion, we demonstrated that the contracting officer rationally determined

that the prices of the awardee for each region were reasonable.  Def. Mot. 27-33.  DynCorp's

primary response is to bury its head in the sand and continue to deny that the Army evaluated the

awardees' prices for reasonableness.  *See* Pl. Resp. 7.  In reality, the contracting officer signed a memorandum to file for each region, expressly determining that the awardee's total evaluated price for that region is "fair and reasonable."  Tabs 197 to 203.  She based each finding upon a comparison of the prices proposed, as well as a value analysis (except CENTCOM, where the awardee also had the lowest price).  *Id.*  Accordingly, it is beyond dispute that the contracting officer made a price reasonableness determination for the awardee for each region.

DynCorp's attempts to second guess the contracting officer's price reasonableness determinations fare no better.  DynCorp concedes that "competition is a viable indicator for an agency to 'conclude an awardee's price is reasonable if it is consistent with the prices received from various competitors[.]'"  Pl. Resp. 7 (citation and emphasis omitted).  Indeed, in *WKG and Associates, LLC*, the GAO determined, citing FAR § 15.404-1(b)(2)(i), that the agency properly concluded that the awardee's price was reasonable based upon adequate price competition, where awardee's price was third-lowest out of six vendors and was more than double the protestor's price.  *See* 2014 CPD ¶ 250, 2014 WL 4213061, at *2, *7 n. 11 (Comp. Gen. 2014).

Here, the awardee's total evaluated price in each region was consistent with the prices received from the other offerors.  In each of the six regions where an IDIQ contract could have been awarded based upon that region's best-value determination, the awardee's total evaluated price was less than 25 percent higher than the lowest total evaluated price, and it was lower than at least two of the other five offerors.  Tabs 198 to 203.[5]  Accordingly, it was reasonable to find the awardees' total evaluated prices reasonable solely based upon adequate price competition.

---

[5]  As we demonstrated in our cross-motion, DynCorp may not challenge the Afghanistan evaluation because it was a pure task order competition.  *See* Def. Mot. 30 n. 11.  In any event, the awardee's total evaluated price in Afghanistan was only 41 percent higher than the lowest total evaluated price, and the awardee's price was not the highest.  Tab 197, AR 73819.

This case is readily distinguishable from the *Technatomy* decision relied upon by DynCorp.  Pl. Resp. 8.  In *Technatomy*, the GAO determined that the agency "failed to compare the offerors' prices" to one another.  2018 WL 5292575, at *10.  Here, unlike in *Technatomy*, *id.* at *11, the contracting officer did not simply rank the offerors' prices from highest to lowest.  Rather, she identified the percentage difference between each offeror's total evaluated price and the lowest total evaluated price, as well as the percentage difference between each offeror and the next-lowest total evaluated price.  Tabs 197 to 203.  The contracting officer had ample basis to rationally conclude that the awardees' total evaluated prices were reasonable based solely upon adequate price competition, pursuant to FAR § 15.404-1(b)(2)(i).[6]

In our cross-motion, we also demonstrated that the contracting officer rationally determined that the prices of the awardee for each region were reasonable based upon a value analysis pursuant to FAR § 15.404-1(b)(4).  Def. Mot. 30-32.  It is not clear whether DynCorp challenges this aspect of the evaluation in its response, as DynCorp only addresses value analysis in a section challenging the decision not to conduct discussions with DynCorp.  Pl. Resp. 7-11.[7]  Nevertheless, DynCorp's understanding of value analysis in the price-reasonableness context is incorrect, so we address it here.

DynCorp erroneously relies upon *Litton Systems, Inc., Amecom Div.*, 97-1 CPD ¶ 170, 1997 WL 230872 (Comp. Gen. 1997), to suggest that "value analysis" requires the agency to

---

[6]  As we demonstrated in our cross-motion (p. 30 n.12), *Serco Inc. v. United States* is also distinguishable, as the agency in that case had awarded IDIQ contracts to the offerors whose prices ranked 59th, 60th, and 61st out of 62 offerors, and whose prices were more than double the price of the lowest-priced awardee.  81 Fed. Cl. 463, 492 (2008).

[7]  As demonstrated in Section I.A.1 n.2, above, we did not contend in our cross-motion that the contracting officer conducted a "value analysis" when evaluating the reasonableness of *DynCorp's* prices.  She conducted a value analysis for the *awardee* of each region except CENTCOM.  Tabs 197 to 203.

"quantify . . . certain differences in the proposed technical approaches" of offerors.  Pl. Resp. 10.

In *Litton*, however, the protestor was not challenging a price-reasonableness determination, and

the GAO did not interpret FAR § 15.404-1(b)(4).  Rather, *Litton* involved a particular

solicitation's idiosyncratic evaluation methodology whereby the agency "added a layer of

evaluation after the determination of most probable costs" to adjust offeror's prices.  1997 WL

230872, at *9.

Here, as we demonstrated in our cross-motion, the contracting officer rationally

performed a value analysis pursuant to FAR § 15.404-1(b)(4), by relying upon the SSAC's

Comparative Analysis Report and the Source Section Authority's decision document to

determine where the awardee for each region offered additional value, based upon the

solicitation's evaluation criteria.  Def. Mot. 30-32.  DynCorp appears to criticize the contracting

officer for not articulating, in her memoranda, the specific areas where the awardees offered

greater value than the lowest-priced offerors, but provides no statute or regulation requiring the

contracting officer to restate the SSAC's and Source Selection Authority's findings in her price-

reasonableness determinations.  *See* Pl. Resp. 10 & n.4.

Accordingly, DynCorp has not demonstrated any irrationality in the contracting officer's

determinations that the awardees' prices were reasonable.

**B.      DynCorp Has Not Demonstrated Prejudice From Any Alleged Error In The
         Price-Reasonableness Determinations For The Awardees**

DynCorp has still failed to demonstrate prejudice from any alleged error in the evaluation

of the reasonableness of the awardee's prices.  As we demonstrated in our cross-motion, the

results of a more detailed evaluation of the awardee's prices in each region necessarily would

have been either: 1) the awardee's prices were still reasonable, in which case the award decision

would not have changed; or 2) the awardee's prices were unreasonable, in which case the Army

would have been required to notify the awardee of its unreasonable prices during discussions, which would have given the sophisticated Government contractor an opportunity to lower its prices to beat DynCorp by an even wider margin.  Def. Mot. 33.  DynCorp does not address this fact in its response, and it has failed to demonstrate prejudice.

**III.**   **Cost Realism**

**A.**   **DynCorp Has Not Demonstrated Any Prejudicial Error In The Army's Analysis Of The Realism Of Offerors' Proposed Labor Hours**

In our cross-motion, we demonstrated that the Army conducted a thorough and detailed cost-realism analysis, and DynCorp failed to establish any prejudicial error.  Def. Mot. 33-40.  In response, DynCorp ignores the vast majority of our contentions and, instead, erroneously alleges that we do not identify "anything in the record explaining the wide disparity in proposed labor hours or concluding that the significantly lower hours and prices were adequate for the work." Pl. Resp. 24.

As we demonstrated in our cross-motion, the "wide disparity in proposed labor hours" was due to the wide discretion offerors were given to propose unique labor staffing models and independently provide support for their labor estimates.  Def. Mot. 36-37; *see also* Tab 3, AR 2616-17; *AECOM Mgmt. Servs., Inc.—Advisory Op.*, B-417506.12, 2019 WL 5207000, *8-11 (Comp. Gen. Sept. 18, 2019).  Also, when the Army identified areas where it believed that an offeror's labor hours were understated, it raised the issue during discussions.  *See, e.g.*, Tab 96-2, AR 68288-90, 68297-98; Tab 97-3, AR 68393, 68398.  The Army was not required to "verify each and every item in assessing cost realism," *e.g.*, *PAE Aviation and Tech. Servs.. LLC*, 2019 CPD ¶ 317, 2019 WL 4746814, *7 (Comp. Gen. 2019), so it certainly was not required to specifically document why each offeror's proposed labor hours for each of the dozens of individual performance work statement tasks were realistic.

15

In any event, DynCorp has still failed to establish that adjusting KBR's probable cost for NORTHCOM, based upon the four tasks that DynCorp questions in that region, would come anywhere close to making up the $182 million difference between DynCorp's and KBR's prices. Accordingly, DynCorp has not demonstrated prejudice from the alleged error.

**B.** **DynCorp Has Not Demonstrated That The Army Should Have Increased The Probable Cost For Fluor's AFRICOM Proposal Or That Any Such Error Was Prejudicial**

Similarly, DynCorp does not even attempt to engage our contentions with regard to Fluor's AFRICOM proposal. *See* Def. Mot. 38-40; Pl. Resp. 24. As we demonstrated, the solicitation did not require offerors to provide detailed legal memoranda regarding host nation labor laws, and, thus, the Army rationally relied upon Fluor's representations that its cost proposal complies with host nation labor laws. Def. Mot. 39-40.[8]

Additionally, DynCorp's response does not explain how it could have been prejudiced by the Army's alleged failure to make a $14.5 million probable cost adjustment to Fluor's AFRICOM proposal. Pl. Resp. 24. As we demonstrated in our cross-motion, this adjustment could not result in DynCorp winning the AFRICOM task orders. Def. Mot. 40. Accordingly, DynCorp still has not demonstrated prejudice from this alleged error.

**IV.** **KBR's Past Performance**

**A.** **The Army Rationally Assigned KBR A Past Performance Rating Of Substantial Confidence**

In its response, DynCorp erroneously continues to second guess KBR's Substantial Confidence past performance rating. Pl. Resp. 17-23. As we demonstrated in our cross-motion, the Army thoroughly considered KBR's recent performance issues on one particular task order,

---

[8] Also, as we demonstrated in our cross-motion, the Court should ignore DynCorp's declarations when considering the merits of the Army's procurement decisions. Def. Mot. 39.

but rationally determined that those issues were mitigated by KBR's response to the allegations

and outweighed by KBR's strong past performance on numerous other relevant contracts.  Def.

Mot. 14-23.  KBR's mere disagreement with the Army's evaluation does not demonstrate any

irrationality.  *See, e.g.*, *CYIOS Corp. v. United States*, 122 Fed. Cl. 726, 747 (2015), *aff'd*, 674 F.

App'x 1016 (Fed. Cir. 2017).

For example, KBR erroneously criticizes the Army for not interviewing anyone

associated with KBR's ████████████████ .  Pl. Resp. 15-16.  The solicitation did not

require the agency to interview past performance references, *see* Tab 3, AR 2628, and the Army

did not need to conduct any oral interviews with regard to this task order because it had

extensive written correspondence with the contracting team.  *See* Tab 544, AR 223694-701,

223818-30, 223845-47, 223871-918, 223922-30, 223934-61.  Where the Army had follow-up

questions, it asked in writing.  *See id.* at 223934-36, 223951-52, 223958-61.

Also, we did not "invent[]" this explanation, as DynCorp alleges.  Pl. Resp. 15.  Rather,

as demonstrated above, it is apparent from the administrative record.  In any event, not every

procurement decision needs to be contemporaneously explained, *see Savantage Fin. Servs., Inc.*

*v. United States*, 595 F.3d 1282, 1287 (Fed. Cir. 2010), *Impresa*, 238 F.3d at 1337-38, and

DynCorp has not cited any requirement that the Army document decisions to not interview

references.

DynCorp similarly criticizes the Army for not further investigating some of the concerns

raised by ████████ and not corroborating KBR's explanations regarding those concerns.  Pl.

Resp. 16-20.  But DynCorp fails to cite any statutory, regulatory, or solicitation requirement that

the procuring agency conduct an independent investigation regarding allegations of past

performance issues.  *Id.*  The Army considered the views of the past performance references for

the task order at issue, as well as the views of KBR, and reasonably determined that the issues on this one contract were not sufficient to lower KBR's past performance rating, in light of KBR's response to the allegations and positive past performance on this and other relevant contracts. *See* Tab 103-1, AR 68826-33, 68867-69.  The Army did not "whitewash[]" KBR's past performance, Pl. Resp. 17-18, it simply viewed KBR's overall past performance record differently than did DynCorp.  DynCorp's mere disagreement does not demonstrate any irrationality.

In its response, DynCorp also re-hashes its arguments that the Army's conclusions regarding KBR's performance are not supported by the administrative record.  Pl. Resp. 21-23. In our cross-motion, we addressed these arguments in detail.  Def. Mot. 45-47.  In sum, the Army's bases for finding that the issues on the ███████████████ were mitigated are fully supported by the record.  And it is unlikely that the minor misstatement regarding CPQ respondents providing recommendations for future awards, which is present in DynCorp's past performance report as well, Tab 102-1, AR 68679, would have altered KBR's rating.

Finally, although DynCorp concedes that KBR's past performance report is "many pages," it incorrectly asserts that we cannot "identify anywhere that the Army addressed ██████ ███ serious concerns about KBR's material non-compliance."  Pl. Resp. 23.  In KBR's past performance report, the Army expressly identified the primary issues that ████████ raised and explained why they do not affect KBR's past performance rating.  Tab 103-1, AR 68831-33. Although the Army did not cut and paste every assertion made by ████████ into KBR's past performance evaluation report, this was not necessary, as past performance evaluations are not required to be "exhaustive[.]"  *Westech Int'l, Inc. v. United States*, 79 Fed. Cl. 272, 294 (2007).

Accordingly, the Army rationally assigned KBR a Substantial Confidence Past Performance rating based upon its strong performance on numerous relevant contracts, notwithstanding some recent adverse past performance on one ███████████████ .

> **B.     DyncCorp Has Not Demonstrated Any Prejudice From The Army's Decision Not To Lower KBR's Past Performance Rating**

In any event, DynCorp still has not shown prejudice from the alleged misevaluation of KBR's past performance.  As we demonstrated in our cross-motion, even if the Army lowered KBR's past performance rating, it is highly likely that KBR would have still been superior to DynCorp for the combined non-price factors, in light of KBR's better Technical/Management ratings, and KBR's total evaluated prices would have still been lower than DynCorp's.  Def. Mot. 47-48.  Accordingly, it is highly unlikely that lowering KBR's Past Performance rating would have resulted in DynCorp receiving an IDIQ contract.

## V.     **DynCorp Has Not Demonstrated An Entitlement To A Permanent Injunction**

As we demonstrated in our cross-motion, in the unlikely event that the Court determines that the Army committed a prejudicial error, the Court should not grant DynCorp injunctive relief due to the harm to our mission in Afghanistan and elsewhere in CENTCOM.  Although DynCorp describes this harm as "merely inconvenience," Pl. Resp. 29, Lieutenant General Duane Gamble disagrees.  *See* Def. Mot. App. 5-8.  The Court should defer to the predictive judgment of military personnel, not DynCorp, on issues of national defense.  *See Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 27 (2008).

Also, although DynCorp suggests that the Court could limit injunctive relief to the other regions, that is not feasible.  If DynCorp were to receive an IDIQ contract (but not the CENTCOM task orders), then it would then be eligible to compete for the Afghanistan task order.  Tab 3, AR 2625.  Given the logistical difficulties of transitioning, even under the best of

circumstances, Def. Mot. App. 7, it would make little sense to transition to the Afghanistan task order while the procurement was ongoing.  Accordingly, if the Court enjoined the transition in any region, it would effectively enjoin the transition in Afghanistan.

Therefore, DynCorp has not demonstrated an entitlement to an injunction.

## **CONCLUSION**

For these reasons and the reasons stated in our cross-motion, the Court should grant the Government judgment on the administrative record.

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

ROBERT E. KIRSCHMAN, JR.
Director

Of Counsel:

s/ Patricia M. McCarthy
PATRICIA M. MCCARTHY
Assistant Director

SCOTT N. FLESCH
RAYMOND M. SAUNDERS
DANA J. CHASE
MAJOR GREGORY T. O'MALLEY
CAPTAIN JEREMY D. BURKHART
U.S. Army Legal Services Agency
Contract & Fiscal Law Division
9275 Gunston Road, Suite 2113
Fort Belvoir, VA 22060-5546

s/ William P. Rayel
WILLIAM P. RAYEL
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
United States Department of Justice
PO Box 480, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 616-0302
Fax: (202) 307-0972
E-mail: William.Rayel@usdoj.gov

Dated: November 14, 2019

Attorneys for Defendant